

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-19-2005

# In Re: Schering

Precedential or Non-Precedential: Precedential

Docket No. 04-3073

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Schering " (2005). *2005 Decisions.* Paper 595.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/595

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3073

IN RE: SCHERING-PLOUGH CORPORATION ERISA
LITIGATION,

JINGDONG ZHU, on behalf of
himself and all other similarly
situated; ADRIAN FIELDS, on
behalf of himself/herself and all
others similarly situated,

Appellants

On Appeal from the United States District Court
for the District of New Jersey, Newark
(D.C. Civil Action No. 03-cv-01204)
District Judge: Honorable Katharine S. Hayden

Argued June 7, 2005

Before: AMBRO, STAPLETON, and
ALARCÓN[*], <u>Circuit Judges</u>

(Filed: August 19, 2005)

Richard S. Schiffrin, Esq.
Joseph H. Meltzer, Esq.
Schiffrin & Barroway LLP
280 King of Prussia Road
Radnor, PA 19087

Joseph DePalma, Esq.
Lite DePalma Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102

Peter H. LeVan, Jr. Esq. (Argued)
Hangley, Aronchick, Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103

<u>Counsel for Appellants</u>

---

[*] The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Douglas S. Eakeley, Esq.
Gavin J. Rooney, Esq.
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, N.J. 07068

Ethan M. Posner, Esq. (Argued)
Peter J. Nickles, Esq.
Amy N. Moore, Esq.
Caroline M. Brown, Esq.
Frederick G. Sandstrom, Esq.
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 2004

Jonathan A. Wasserman, Esq.
Schering-Plough Corporation
2000 Galloping Hill Road
Kenilworth, N.J. 07033

Counsel for Appellees

Howard M. Radzely
Timothy D. Hauser
Elizabeth Hopkins, Esq.
Theresa S. Gee, Esq. (Argued)
United States Department of Labor
Plan Benefits Security Division
200 Constitution Avenue, N.W.

3

Room –4611
Washington, D.C. 20210

Counsel for Amicus Curiae U.S. Department of Labor

Mary Ellen Signorille, Esq.
Melvin Radowitz, Esq.
601 E. Street, N.W.
Washington, D.C. 20049

Counsel for Amicus Curiae AARP

Kent A. Mason, Esq.
Jason K. Bortz, Esq.
Davis & Harman, LLP
1455 Pennsylvania Ave., NW
Washington, D.C. 20004

Robert G. Chambers, Esq.
Jack W. Campbell IV, Esq.
Helms, Mulliss & Wicker
201 North Tryon Street
Charlotte, N.C. 28202

Counsel for Amicus Curiae American Benefits Council

---

OPINION OF THE COURT

---

4

ALARCÓN, <u>Circuit Judge</u>

We must decide in this matter whether, under the Employee Retirement Income Security Act of 1974 ("ERISA"), the District Court erred in ruling that former employees, who were participants in a defined contribution plan, may not prosecute a derivative action on behalf of an employees' savings plan to recover losses sustained by the savings plan because of alleged breaches of fiduciary duty. We conclude that the Plaintiffs may seek money damages on behalf of the fund, notwithstanding the fact the alleged fiduciary violations affected only a subset of the saving plan's participants.

Accordingly, we will reverse and remand for further proceedings.

**I**

**A**

The complaint alleges the following facts. Jingdong Zhu and Adrian Fields (the Plaintiffs) are former employees of Schering-Plough Corporation ("Schering"). During their employment with Schering, the Plaintiffs elected to participate in the Schering-Plough Employees' Savings Plan ("the Savings Plan" or "the Plan"). Under the Savings Plan, a Schering

5

employee agreed to reduce his or her take-home compensation in order to invest that amount in one or more investment funds on a pre-tax basis[1]. The Savings Plan authorized a participant to select from different investment funds. One of the investment funds was the Schering Plan Company Stock Fund ("the Company Stock Fund"), which consisted of company stock. Under the Savings Plan, a participant was not permitted to invest more than 50% of his or her future contributions in Schering stock. Some of the Plaintiffs' deferred compensation included an investment in the Company Stock Fund.

As of December 31, 2001, Schering stock made up approximately 31% of the value of the Saving Plan's assets. More than 60% of the employees who participated in the Saving

---

[1] An employee who participates in a deferred compensation plan to save for retirement qualifies for tax benefits pursuant to 26 U.S.C. § 401(k). The type of deferred compensation plan offered to Schering employees is referred to in ERISA as an "individual account plan" or a "defined contribution plan." 29 U.S.C. § 1002(34). These terms refer to "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." *Id.*

Plan had at least some of their assets allocated to the Company Stock Fund. In fiscal year 2001 the loss in the value of Schering stock constituted 87% of the drop in value of the Saving Plan's assets, and in 2002 the loss in Schering's stock's value constituted 50% of the Saving Plan's net loss. The loss to the Savings Plan was approximately $138,000,000. By June of 2003 the price of Schering stock had fallen below $20 per share from a class-period high of better than $60 a share.

**B**

On October 6, 2003, the Plaintiffs filed this class action pursuant to 29 U.S.C. § 1132(a)(2) on behalf of the Savings Plan and "[a]ll persons who were participants in or beneficiaries of the Saving Plan at any time between July 29, 1998 and the present (the 'Class Period'), and whose accounts included investments in Schering stock." The complaint named as defendants and as fiduciaries of the Savings Plan Schering, Richard Kogan, its former CEO, members of the Schering Board's Pension Committee, the Schering-Plough Employees Benefits Committee and one of its members, the Schering-Plough Benefits Investment Committee and three of its members, the counsel of the Investment Committee, and Vanguard Group, Inc., the Trustee of the Savings Plan (collectively "the Defendants").

7

The complaint alleges that the Defendants breached their fiduciary duties of prudence, care, and loyalty by continuing to offer the Company Stock Fund as one of the Savings Plan alternatives when they knew that Schering's stock price was unlawfully and artificially inflated. Additionally, the Plaintiffs alleged that the Defendants failed to disclose negative material information about Schering, which induced participants in the Savings Plan to elect to invest in the Company Stock Fund. The complaint also alleges that some of the Defendants did not loyally serve the Saving Plan participants by taking steps to avoid a conflict of interest such as making appropriate public disclosures, divesting the Savings Plan of Schering stock, discontinuing further investments in Schering stock, consulting independent fiduciaries, or resigning as Savings Plan fiduciaries.

In lieu of answering the complaint, the Defendants filed a motion to dismiss the action for failure to state a claim under § 1109(a).[2] The Defendants argued that "[b]ecause [Section

----

[2] 29 U.S.C. § 1109 reads as follows:
Liability for breach of fiduciary duty
(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore

8

1109(a)] authorizes relief only for 'the plan', a participant can state a claim only if he proceeds in a representative capacity on behalf of 'the plan as a whole' and seeks to recover for *all* plan participants allegedly injured by the fiduciary breach." (Emphasis in the original.). In addition, they asserted that the Plaintiffs do not seek relief on behalf of the Plan as a whole because the complaint allegedly excludes current employees who were part of the sub-group that invested in the Company Stock Fund.

They further maintained that the consolidated complaint improperly seeks "individual relief for each Plan participant" because it prays for "an allocation 'among the Participants' *individualized accounts* in proportion to the *accounts'* losses.'" (Emphasis added in the Defendants' motion.). Finally, the Defendants contended that the Plaintiffs failed to allege facts

---

to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of 29 USCS § 1111.
(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

9

showing detrimental reliance by the Saving Plan's participants on the Defendants' alleged misrepresentations and non-disclosures.

The District Court granted the Defendant's motion and dismissed the consolidated complaint with prejudice. It held that the Plaintiffs lacked standing to prosecute this action under 29 U.S.C. §§ 1109(a) and 1132(a)(2)[3] because the consolidated complaint alleges only "harm suffered by the individual Plan Participants and not the Savings Plan, and seeks relief measured by the harm to individuals and tailored for the benefit of individuals, and not the Savings Plan." The District Court summarized its conclusion in these words:

> Even assuming that each defendant is an ERISA fiduciary, that each of plaintiffs' allegations concerning defendants' conduct were true, and that this conduct rose to a level to breach ERISA's fiduciary duties (without the Court opining as to

---

[3]29 U.S.C. § 1132(a)(2) reads as follows: "A civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."

merits of these assumptions), plaintiffs cannot demonstrate how any defendant would be "personally liable for damages ('to make good to [the] plan any losses to the plan resulting from each such breach')" to the Saving Plans because it is only Plan Participants who might be able to show that they suffered individualized losses.

The District Court commented further that because "plaintiffs can point to no set of facts that would demonstrate losses to the plan. . . . the Court need not reach defendants' further arguments in favor of dismissal."

The Plaintiffs have timely appealed. The District Court had subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) of ERISA. This Court has appellate jurisdiction under 28 U.S.C. §§ 1291, 1294(1).

## II

### A

The Plaintiffs contend that "[t]he district court erred in

11

failing to distinguish between the plan-wide nature of the losses caused by defendants' fiduciary breaches, and the fact that the losses caused by those breaches are reflected in the Plan's individual participant accounts." They argue that the District Court erred in concluding that their contributions were kept in separate, segregated accounts and never became a part of the Saving Plan's assets. Instead, the Plaintiffs maintain that the Savings Plan was a unitary trust that purchased and maintained stock in the Company Stock Fund, which was one of the fourteen investment alternatives in a defined contribution employee benefit plan. The Plaintiffs also assert that the District Court erred in determining that the Company Stock Fund was an individual account plan and an Employee Stock Ownership Plan ("ESOP").

> We exercise de novo review over the dismissal of claims under Federal Rule of Civil Procedure 12(b)(6). *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 249 n.25 (3d Cir. 2001). Furthermore, we must take all factual allegations and reasonable inferences as true and view them in the light most favorable to Plaintiffs. *Id.* The District Court

12

> properly dismissed Plaintiffs'
> complaint only if Plaintiffs could
> have proved no set of facts entitling
> them to relief. *Id.*

*Mariana v. Fisher*, 338 F.3d 189, 195 (3d Cir. 2003) (full citation provided).

Under § 1002(21)A of ERISA, 29 U.S.C. § 1002(21)A, those having discretionary authority or discretionary responsibility in the administration of a plan are fiduciaries. Section 1104 imposes upon them fiduciary duties including the duties of "care, skill, prudence, and diligence under the circumstances." 29 U.S.C. § 1104. Section 1109(a) makes plan fiduciaries "personally liable to make good to [the] plan any losses to the plan resulting from each . . . breach" of fiduciary duty. 29 U.S.C. § 1109(a). And, finally, § 1132(a)(2) provides that a "civil action may be brought . . . by a participant or beneficiary . . . for appropriate relief under section 1109." 29 U.S.C. § 1109.

The issue presented here is whether the complaint states a claim under § 1109 – *i.e.*, whether the complaint seeks relief for the Schering-Plough Employees' Savings Plan based on allegations that there were "losses to the plan resulting from [a] breach" of fiduciary duty. We believe it clearly does.

13

The complaint alleges that "[a]s a consequence of the defendants' breaches [of fiduciary duty], the Plan suffered significant losses" and seeks "a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from [those] breaches of fiduciary duty." Section 1109 allows the Plan to recover "*any losses*" from a breach of fiduciary duty. 29 U.S.C. § 1109 (emphasis added). The fiduciary's liability is not limited to plan "losses that will ultimately redound to the benefit of all participants." The Plan held Schering-Plough stock as an asset and that asset was greatly reduced in value allegedly because of breaches of fiduciary duty. This clearly was a "loss" to the Plan within the meaning of § 1109.[4]

Just as the fact that the assets at issue were held for the ultimate benefit of Plaintiffs does not alter the fact that they were held by the Plan, so, too, the fact that Plaintiffs may have to show individual reliance on the defendants' alleged

---

[4] The Supreme Court did not hold otherwise in *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134 (1985). While the Court did observe in that case that § 1132(a)(2) actions seek remedies which provide a benefit "to the plan as a whole," the issue presented here was not before the Court. Moreover, the recovery in this case would go to the Plan as a whole to be held in accordance with the terms of the plan, including the payment of operating expenses and the like, which would redound to the benefit of all participants.

14

misrepresentations to prevail on some claims does not mean they do not seek recovery for Plan losses. As the Court aptly put it in *In re Honeywell Int'l ERISA Litigation,* Civil No. 03-1214 (D.N.J., June 14, 2004) at 30:

> [L]osses to the Plan may have resulted from decisions by individual participants, but that does not mean that those losses were not losses of the Plan; it simply means that some of the decision making for Plan investments was conducted by the participants who contributed to it.

It is a *non sequitur* to say, as the District Court did, that Plaintiffs cannot demonstrate any losses to the Plan because it is an "individual account plan which includes an ESOP investment alternative." First, while the Plan is, indeed, an "individual account plan," this does not preclude the Plan from having losses. Second, the Plan is not an "employee stock ownership plan" or an "ESOP." Under § 1107(d)(6)(A), an "employee stock ownership plan" is "designed to invest primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6)(A). As this Court explained in *Moench v. Robertson*, 62 F.3d 553, 568 (3d Cir. 1995):

> [ESOPs are] "device[s] for expanding the national capital base among employees – an effective

merger of the roles of capitalist and worker."
*Donovan v. Cunningham*, 716 F.2d at 1458. Thus,
the concept of employee ownership constituted a
goal in and of itself. To accomplish this end,
"Congress . . . enacted a number of laws designed
to encourage employers to set up such plans." *Id.*

The Plan before us was designed to provide opportunities for saving and investment. It was not designed to invest primarily in securities of the employer. Indeed, the Plan was not required to offer Schering-Plough stock as one of its investment opportunities.

The District Court's conclusions (1) that Plaintiffs' contributions were never assets of the Savings Plan and never aggregated, and (2) that Plaintiffs only seek damages for their individualized losses, directly conflict with the express terms of the Savings Plan as well as other allegations of the complaint.

The Savings Plan provides in Article 4.01(a) that contributions to the Savings Plan

> shall be invested in one or more
> Investment Funds authorized by the
> Investment Committee, which,
> from time to time, may include

16

such equity funds, international equity funds, fixed income funds, money market funds, a Company Stock Fund, and other funds or investment vehicles as the Investment Committee elects to offer.

Article 4.02 provides as follows:

A participant shall make one investment election covering his or her Accounts in accordance with the following options:

(a) 100 percent in one of the available Investment Funds;

(b) in more than one Investment Fund allocated in multiples of 1 percent;

17

provided, however, that in no event may a Participant allocate more than 50 percent of future contributions to the Company Stock Fund. If a Participant fails to make an investment election with respect to 100 percent of his or her Accounts, the portion of such Accounts not subject to the Participant's investment election shall be invested in a money market fund or equivalent investment vehicle.

Section 4.03 reads as follows:

Each Participant is solely responsible for the selection of his or her investment options. The Trustee, the Committee, the Investment Committee, any Employer, and the officers, supervisors and other employees of any Employer are not empowered to advise a Participant as to the manner in which his or her

18

accounts shall be invested. The fact that an Investment Fund is available to Participants for investment under the Plan shall not be construed as a recommendation for investment in that Investment Fund.

Pursuant to Article 4.05,

[a] participant may elect to reallocate his or her Accounts among the Investment Funds, in multiples of 1 percent, by giving such Notice as the Committee or its delegate shall prescribe; provided, however, that in no event may a Participant allocate more than 50 percent of the value of his or her Accounts at the time of the reallocation to the Company Stock Fund. The reallocation shall be effective as soon as administratively practicable after the Trustee receives such Notice.

19

Article 5.01 requires the trustee of the Savings Fund to value each of the Investment Funds each business day. "On each Valuation Date there shall be allocated to the Accounts of each Participant his or her proportionate share of the increase or decrease in the fair market value of his or her Accounts in each of the Investment Funds." Article 5.03 requires the trustee to furnish each participant with a statement setting forth the value of his or her Accounts each calendar quarter.

Article 9.06 provides that until the accounts of a participant who is entitled to distribution because of the termination of employment or after the 65th anniversary of the Participant's date of birth, are completely distributed, "the Accounts of a Participant who is entitled to a distribution shall continue to be invested as part of the funds of the Plan . . . ."

In Section 10.09, the Savings Plan provides that "[t]he Committee or its delegate shall maintain, or cause to be maintained, records showing the individual balances in each Participant's Accounts. However, maintenance of those records and Accounts shall not require any segregation of the funds of the Plan."

In Section 11.01, the Savings Plan provides that "[a]ll the funds of the Plan shall be held by the Trustee appointed from time to time by the Investment Committee or its delegate under

20

a trust agreement adopted, or as amended, by the Board of Directors."

Pursuant to Article 11.03, "*Company Stock held by the Trustee* shall be voted by the Trustee at each annual meeting and at each special meeting of stockholders of the Company as directed by the Participant to whose Accounts such Company Stock is credited." (emphasis added).

Thus, contrary to the District Court's interpretation of the provisions of the Savings Plan, each participant's deferred payroll compensation was held in trust as the assets of the Savings Plan. Each participant in the Savings Plan was provided with an individualized account and periodically informed of the individual balance in his or her account. The Savings Plan also makes clear the fact that each participant has an individual account does not "require any segregation of the funds of the Plan." Article 10.09.

The District Court cited this Court's decision in *Moench* in support of its determination that a plan that permits employees to become part owners of their employer is an ESOP and not a traditional pension plan governed by ERISA. As noted above, the Defendants have conceded that the Savings Plan we are considering is not an ESOP. In *Moench*, this Court held that "in limited circumstances, ESOP fiduciaries can be liable under

21

ERISA for continuing to invest in employer stock according to the plan's direction . . . ." *Id*. at 556. It went on to say that "[w]hile fiduciaries of pension benefit plans generally must diversify investments of the plan assets . . ., fiduciaries of ESOPS are exempted from this duty." *Id*. at 568. In reversing the District Court's holding that an ESOP cannot be held liable for investing solely in employer common stock, this Court explained that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its decision by investing in employer securities." *Id*. at 571. The principle announced in *Moench* has no application to the duty of a fiduciary of pension benefit plans to diversify investments "so as to minimize the risk of large losses." *Id*. at 568. "ESOPs, unlike pension plans, are not intended to guarantee retirement benefits, and indeed, by its very nature, 'an ESOP places employee retirements assets at much greater risk than does the typical diversified ERISA plan.'" *Id*. at 568. Because the Savings Plan in this case was not an ESOP, the *Moench* decision does not resolve the issue presented in this matter.

In a letter to this Court filed pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, the Defendants cited a recent decision of the Fifth Circuit, *Milofsky v. American*

22

*Airlines, Inc.*, 404 F.3d 338 (5th Cir. 2005) *reh'g en banc granted*, No. 03-11087, 2005 U.S. App. LEXIS 15122, (5th Cir. July 19, 2005)[5] in support of their argument that a participant lacks standing to bring an action on behalf of an individual account pension plan if he or she does not seek plan-wide relief.

In *Milofsky*, the plaintiffs were employed as pilots by Business Express, Inc. ("BEX") when it was acquired by AMR Eagle Holding Corporation, the holding company of American Eagle, Inc. ("American Eagle"). While employed by BEX, the plaintiffs participated in its individual account pension plan. *Id*. at 340. At the time of the acquisition of BEX, the plaintiffs were given notice that the balance of their accounts in the BEX plan would be transferred to a comparable American Eagle 401k plan. The notices advised the plaintiffs when the transfers would occur. The transfers did not occur, however, until months after the time written in the notice. *Id*. at 340-41.

The plaintiffs filed a class action against American Airlines and Towers Perrin, a benefits consulting firm hired by American Airlines to render administrative services in

---

[5]Fifth Circuit Rule 41.3 states that "[u]nless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."

23

connection with the plan. *Id*. at 340. The action, which was filed under 29 U.S.C. § 1132(a)(2), alleged that American Airlines and Towers Perrin had violated fiduciary duties in misrepresenting how and when their accounts would be transferred to the American Eagle 401(k) plan. *Id*. "They alleged that because of the failure to effect the transfer of the class members' account balances in a timely and prudent manner, the values of their accounts decreased because the assets remained invested in the floundering BEX Plan longer than expected." *Id*. at 341. The plaintiffs requested "actual damages to be paid to the [American Eagle] $ uper $ aver Plan, to be allocated among their individual accounts proportionately to their losses resulting from the alleged breach." *Id*.

The majority of the three-judge panel in *Milofsky* held that "plaintiffs lack standing because this case in essence is about an alleged particularized harm targeting a specific subset of plan beneficiaries, with claims for damages to benefits [sic] members of the subclass only, and not the plan generally." *Id*. at 347.

The facts in *Milofsky* are clearly distinguishable from those in the matter *sub judice*. In *Milofsky*, the plaintiffs alleged that the value of their investments in the BEX plan decreased because of the failure of the defendants to transfer the funds to the American Eagle 401(k) plan. *Id*. at 351. Thus, this alleged

24

loss occurred prior to the transfer of the BEX plan participants' investments to the American Eagle 401(k) plan. In *Milofsky*, the plaintiffs sought damages on behalf of the BEX plan members, and did not seek to restore assets of the American Eagle 401(k) fund. Here, the Plaintiffs seek damages from the fiduciaries for their violation of their duty to a subclass which had transferred its funds to the trustee of the Savings Fund.

In *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), the Sixth Circuit held that a subset of employee benefit participants has standing to bring an action for breach of fiduciary duty under 29 U.S.C. §1109. The Court rejected the same argument presented by the Defendants in this matter that "an action under 29 U.S.C. § 1109 must be brought on behalf of a plan as a whole and that a claim brought by a subclass of plan participants fails to satisfy this requirement." *Id*. at 1452. The Sixth Circuit in *Kuper* concluded that the plaintiffs had standing to bring this action pursuant to §1132(a)(2). Citing *Moench*, however, it affirmed the dismissal of the action on the merits, adopting this Court's rule that a fiduciary who invests in an employer's stock is entitled to a rebuttable presumption that it acted consistently with ERISA in continuing to invest in an employer's securities. *Kuper*, 66 F.3d at 1458-59. The Sixth Circuit affirmed because it concluded that the plaintiffs had failed "to rebut the presumption that defendants acted reasonably in continuing to hold Quantum stock." *Id*. at 1459. In sum, the court concluded

25

in *Kuper* that § 1132(a)(2) does not authorize a plaintiff to recover damages on his or her own behalf. Instead, a plaintiff must seek to have the fiduciary reimburse the plan. *Id*. at 1453.[6]

---

[6]At least one other circuit court, and several district courts, have reached a similar conclusion. In *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599 (8th Cir. 1995), the Eighth Circuit addressed the issue of whether plaintiffs were bringing their action under Section 1132(a)(2) individually or on behalf of the plan. *Id.* at 605. The court explained that the defendants' breach of fiduciary duty resulted in two types of loss: individual loss to the beneficiaries, which is not actionable under *Russell*, and a loss to the plan, which is actionable under Section 1132(a)(2), because the plan itself was also harmed due to the breach. *Id*; *see also In re Honeywell International ERISA Litg.*, No. 03-1214, 2004 U.S. Dist. LEXIS 21585, at *51-52. (D.N.J. Sept. 14, 2004) (holding that even though plaintiffs could choose the investment vehicles in which their funds were invested, those funds were still held by the plan, and therefore plaintiffs were permitted to bring their claim under Section 1132(a)(2)); *In re CMS Energy ERISA Litg.*, 312 F. Supp. 2d 898, 913 (E.D. Mich. 2004) (citing *Kuper* in support of the Court's decision to reject defendant's argument that a claim must be dismissed under Section 1132(a)(2) unless it alleges harm to all of a plan's participants); *Kayes v. Pac. Lumber Co.*, Nos. C-89-3500 SBA, C-91-1812 SBA, 1993 U.S. Dist. LEXIS 21090, *6-7 (N.D. Cal. Mar. 8, 1993), *aff'd in part and rev'd in part on other grounds*, 51 F.3d 1449, 1462 (9th Cir. 1995)

The majority in *Milofsky* stated that the Court's reasoning in *Kuper* is directly contrary to the principle announced in Supreme Court's decision in *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134 (1985), that a participant's action filed pursuant to § 1132(a)(2) must seek remedies that provide a "benefit to the plan as a whole . . . ." *Milofsky*, 404 F.3d at 346. In her dissent, Chief Judge Carolyn Dineen King wrote that

> *Russell* never reached the conclusion that the majority reaches, i.e., that standing can exist under [§ 1132(a)(2)] only if *all* plan participants would benefit from the litigation. Instead, it only held that a single plan participant, seeking individual recovery for extra-contractual damages payable directly to her, could not proceed with her lawsuit under [§

(holding that a plaintiff who sues under Section 1132(a)(2) "does so on behalf of the plan and not in his individual capacity. While the individual has standing to bring the suit, and stands to gain if the suit is successful, his benefit is secondary or derivative of the plans [sic] gain").

27

1132(a)(2)]. *Russell*, 473 U.S. at 134, 105 S.Ct. 3085. Accordingly, the majority's holding goes far beyond the holding of *Russell*.

*Id*. at 349 (emphasis added) (footnote omitted).

In footnote 4 of her opinion, Chief Judge King also stated:

The majority correctly notes that *Russell* distinguishes between relief for individuals and relief for the plan as a whole. Majority Opinion, [344-45]. *Russell* does not, however, stand for the proposition that the 'plan as a whole' is synonymous with 'all participants of the plan,' and several courts have rejected this definition of the 'plan as a whole.'

*Id*. We agree with Chief Judge King's interpretation of *Russell*, and decline to follow the majority's opinion in *Milofsky*.

In *Russell*, the plaintiff was a beneficiary under two

28

employee health benefit plans funded by her employer and governed by ERISA. 473 U.S. at 136. She became disabled and received plan benefits until October 17, 1979. She requested internal review of the termination decision. The plan administrator reinstated her benefits on March 11, 1980, and she was paid retroactive benefits in full. *Id*.

The plaintiff in *Russell* filed an action in state court seeking damages for mental and emotional distress under state law and ERISA claims resulting from the interruption of her benefit payments, as well as punitive damages. *Id*. at 137. The defendant removed the action to the District Court and moved for summary judgment. The District Court granted the motion. It held that the state-law claims were preempted by ERISA, and that ERISA barred claims for extra-contractual and punitive damages. *Id*. The Ninth Circuit affirmed the District Court's determination that the state law claims were pre-empted by ERISA, but also concluded that the complaint alleged a cause of action under §1132(a)(2) and that punitive damages could be awarded. *Id*. at 138.

The Supreme Court reversed the judgment of the Ninth Circuit. It held that § 1109 does not authorize extracontractual or punitive damages. The Court also rejected the plaintiff's argument that a private right of action for extracontractual damages was implied in § 1109. *Id*. at 148. In rejecting the

employee's claims, the Court stated that "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id*. at 142.

Unlike the circumstances presented in this matter, in *Russell* the plaintiff did not file a class action on behalf of an ERISA employee benefits plan to require the defendants to pay damages to the health benefit plan because of their alleged breach of their fiduciary duty. Instead, she filed a private cause of action for extracontractual and punitive damages.[7] The Court did not hold in *Russell* that a subgroup of plan participants cannot file derivative action on behalf of an ERISA employee benefits plan if the fiduciaries' alleged breach did not affect the investments of participants in other subgroups. That issue simply was not before the Court.

The District Court relied in part on *Russell* and its progeny in holding that

---

[7]Thus, *Russell* involved an action brought by one individual who erroneously sought to recover extra contractual damages under ERISA.

30

[a]lthough individual employees' contributions were never aggregated and all employees remained capable of investing on an individualized basis, plaintiffs now seek to theoretically aggregate these individualized losses into losses by "the plan." Such an after-the-fact aggregation by individuals in order to sue on behalf of the plan is not permitted under the language of Sections 1104, 1109 or, most importantly 1132(a)(2).

The District Court based this holding on its misreading of the Savings Plan. While employees were able to choose which fund to invest their assets in, the Savings Plan makes clear that its assets are aggregated and are held in trust by the Savings Plan trustees at all times. The District Court's reliance on *Russell* and its progeny in support of its holding in this particular case was, therefore, misplaced.

The Defendants cite the Ninth Circuit's decision in *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412 (9th Cir. 1991), in support of their argument that the Plaintiffs' cause of

action in this case should be dismissed because the remedies they seek are for their own benefit, and not on behalf of the Savings Plan. In *Horan*, former employees of Kaiser Steel sought to force it to use plan assets in order to purchase annuities for the benefit of each former employee. *Id*. at 1415. The Ninth Circuit held that the plaintiffs could not state a claim because "[t]he remedies sought by the plaintiffs are for their own benefit, and not for the benefit of the Plan. The objective of the plaintiffs' suit is to recover an annuity for each individual plaintiff." *Id.* at 1418.

*Horan* is easily distinguishable from this case. Unlike the plaintiffs in *Horan*, the Plaintiffs in this case do not seek to force the Savings Plan to purchase annuities for their individual benefit. Instead, they seek to force the Defendants to make payments to the Savings Plan for the Defendants' alleged failure to fulfill their fiduciary obligations, in order to remedy the damage their actions caused to the Savings Plan. The fact that damages paid to the Savings Plan for breaches of fiduciary duties will also indirectly benefit its participants does not bar a derivative action under §§ 1109 and 1132(a)(2). *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999).

We are persuaded that the District Court erred in concluding that the complaint fails to state a claim on behalf of the Savings Plan pursuant to §1109.

32

**B**

The Defendants contend that the "individualized nature" of Plaintiffs' claims is reflected in the fact that the consolidated complaint "expressly excludes all Plan participants currently employed by Schering" in the class definition. While this statement is literally true, it seems to us more likely than not that the referenced allegation was inadvertent, given the other allegations of the complaint making it clear that this action was brought for the ultimate benefit of "[a]ll persons who were participants in . . . the Plan at any time [during the class period], and whose accounts included investments in Schering stock." App. at 67. Compare Complaint paragraph 62, App. at 67, with paragraph 3, App. at 48 ("Defendants, as fiduciaries of the Plan, breached their duties to [the Plaintiffs] and to other participants and beneficiaries of the Plan . . . particularly with regard to holdings of Schering stock.") At this point, however, any ambiguity thus created is not significant[8] and can be clarified by amendment on remand.

---

[8] The District Court has yet to address the propriety of this suit being maintained as a class action and we, of course express no view thereon.

**III**

In their motion to dismiss, the Defendants requested that the District Court dismiss the action on the merits because the Plaintiffs failed to allege facts showing a breach of duty by any of the fiduciaries named in the consolidated complaint. The District Court expressly declined to determine the merits of Plaintiffs' allegations that the Defendants breached their fiduciary duties, or whether the counts against Mr. Kogan should be dismissed "because the complaint failed to allege that Mr. Kogan performed any specific fiduciary acts."

The issues raised by the Defendants regarding the merits of the claims of breaches of fiduciary duties involve complex legal and factual questions. This matter was dismissed for lack of standing prior to the filing of an answer, or any other pre-trial proceedings. We decline to review the merits of the Defendants' alternative bases for dismissing this action because "the record as presented to us is not sufficiently adequate for us to give the careful and thoughtful consideration these issues merit. Since the case must go back to the District Court, we think these issues would benefit from further elaboration there in the first instance." *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 249 (3d Cir. 1999). Additional discovery proceedings and possible amendments to the pleadings may clarify the issues should further appellate review become necessary to finally dispose of

this matter.

## Conclusion

We conclude that the District Court erred in dismissing this action on the sole ground that the Plaintiffs failed to state a claim under § 1109 on behalf of the Savings Plan. Accordingly, we reverse the judgment dismissing this action with prejudice and remand with instructions to the District Court to conduct further proceedings regarding the merits of the claims asserted in the consolidated complaint.